UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-80419-CIV-MARRA

In re:

CAMTECH PRECISION
MANUFACTURING, INC., *et al*.,

      Debtor.

_____/

REGIONS BANK,

      Appellant/Defendant,

vs.

OFFICIAL COMMITTEE OF UNSECURED
CREDITORS,

      Appellee/Defendants.

_____/

**OPINION AND ORDER**

    This cause is before the Court on appeal by Appellant Regions Bank's ("Regions") of the

Order Granting Plaintiff's Motion for Summary Judgment and the accompanying Opinion of

Chief Bankruptcy Judge Paul G. Hyman, entered on January 31, 2011.  The Court has carefully

considered the appeal, the briefs of Appellants and Appellee The Official Committee of

Unsecured Creditors ("The Committee"), the entire record on appeal, and is otherwise fully

advised in the premises.

**I.  Background**

    This following facts, which are not disputed by any of the parties, are based upon the

order on review, the parties' respective statement of facts in their appellate briefs, and the

appellate record.

This matter stems from the joint administration of the bankruptcy cases of Camtech Precision Manufacturing, Inc. ("Camtech"), R & J National Enterprises, Inc. ("R & J"), and Avstar Fuel Systems, Inc. ("Avstar Fuel") (collectively referred to as "Debtors"). Camtech, a New York corporation authorized to do business in Florida, and Avstar Fuel, a Florida corporation, entered into various lending arrangements with Regions and Regions' predecessors.

On September 21, 2007, Regions filed six UCC-1 Financing Statements, three with the Florida Secured Transactions Registry and three with the State of New York. All of the forms, including those filed with the State of New York, were filed on a "State of Florida Uniform Commercial Code Financing Statement Form" ("Main Florida UCC Form"). On October 17, 2007, Regions filed two additional forms with the State of New York on forms titled "State of Florida Uniform Commercial Code Financing Statement Amendment Form" ("Florida UCC Amendment Form"), a form that solicits the same information as the Main Florida UCC Form.

Box "1" of both forms prompts filers to identify the "debtor" and Box "2" prompts filers to identify an "Additional Debtor." Both Box 1 and Box 2 instruct the filer to "INSERT ONLY ONE DEBTOR NAME." For all eight of the forms filed, Regions listed "R & J" as the debtor in Box 1 and "Avstar Aircraft Accessories, Inc," an affiliated entity not part of the underlying bankruptcy, as an additional debtor in Box 2. Each of the forms also referred to an attached exhibit in the box requiring a description of the covered collateral (Box 4). Although not referenced anywhere on the main form, the second page of each of the UCC forms contained a plain paper attachment which states that Debtors Camtech and Avstar Fuel are "additional debtors." The third page served as the exhibit describing the collateral referenced in Box 4 of the

main form.

Each of the Debtors filed voluntary Chapter 11 petitions on May 10, 2010.  The Committee was appointed by the United States Trustee on June 4, 2010, and granted standing to prosecute this action by an Agreed Order entered on August 3, 2010.  In the proceedings below Regions asserted a perfected security interest in substantially all of the Debtors' personal property in connection with a term loan and a revolving line of credit, the total amount being $4,153,137.79.  On June 22, 2010, the Bankruptcy Court issued an Agreed Cash Collateral Order that authorized the Debtors to pay Regions $20,910.00 per month.

The Committee filed a Motion for Summary Judgment on October 27, 2010.  The motion asserted that Regions failed to properly perfect its security interest in the assets of Camtech and Avstar Fuel.  The Committee therefore sought a determination that Regions was an unsecured, rather than a secured, debtor and that all payments made pursuant to the Agreed Cash Collateral Order should be disgorged.  The parties stipulated that a search of both the Florida Secured Transaction Registry and the State of New York Department of Corporations did not disclose an indexed UCC-1 financing statement naming Regions a secured party for either Avstar Fuel or Camtech.  In response to The Committee's motion for summary judgment, Regions attached the affidavit of Steven C. Elkin, the Florida attorney that prepared and filed all of the UCC financing statements in question.  The affidavit provided that Elkin's office confirmed with both the State of Florida and the State of New York that he did not need to use a specific form to list additional debtors.

The Bankruptcy Court held that: (1) The UCC Forms did not perfect Regions' asserted security interest in the assets of Camtech and Avstar Fuel; and (2) Regions' filing error caused

3

the financing statements to be seriously misleading and ineffective.  Based on these conclusions

of law, the Bankruptcy Court granted The Committee's Motion for Summary Judgment, declared

Regions to be an unsecured rather than a secured creditor, and ordered Regions to disgorge all

payments made pursuant to the Agreed Cash Collateral Order.  Regions now appeals that Order.

## II.  Legal Standard

The Court reviews the Bankruptcy Court's factual findings for clear error and its legal

conclusions *de novo*.  In re Globe Manufacturing Corp., 567 F.3d 1291, 1296 (11th Cir. 2009); In

re Club Assoc., 951 F.2d 1223, 1228-29 (11th Cir. 1992).  Because the order on review was a

grant of summary judgment, the Court will review the order *de novo*.

## III.  Discussion

Regions asserts that the Bankruptcy Court erred in two ways: (1) by holding the liens in

questions were not perfected; and (2) by disregarding genuine issues of material fact as to

whether the Florida and New York filing offices made indexing errors.  For the reasons discussed

below, the Court agrees with Regions.

Florida and New York have adopted variations of Revised Article 9 of the Uniform

Commercial Code ("UCC").  See N.Y. U.C.C. § 9-101 *et seq.* (effective July 1, 2001); Fla. Stat.

§ 679.1011 *et seq.* (effective January 1, 2002).  Section 9-521 of the UCC, titled "Uniform Form

of Written Financing Statement and Amendment," provides that "A filing office that accepts

written records may not refuse to accept a written initial financing statement in [the form

articulated in this section]."  New York and Florida have codified variations of section 9-521 of

the UCC.  Section 9-521 of New York's Uniform Commercial Code provides:

4

**Uniform Form of Written Financing Statement; Amendment; and Cooperative Addendum**

(a) Initial financing statement form. A filing office that accepts written records may not refuse to accept a written initial financing statement in the form promulgated by the department of state except for a reason as set forth in Section 9-516(b).

(b) Amendment form. A filing office that accepts written records may not refuse to accept a written financing statement amendment in the form promulgated by the department of state except for a reason as set forth in Section 9-516(b).

(c) Cooperative addendum form. A filing office that accepts written records may not refuse to accept a written cooperative addendum in the form promulgated by the department of state except for a reason as set forth in Section 9-516(b).

Florida also authorizes its Secretary of State to create forms, but the Florida statute does not contain the same language which expressly precludes the rejection of written financing statements that use authorized forms:

**Uniform form of written financing statement and amendment** - The Secretary of State shall develop or approve acceptable forms for use in filing under this chapter. Such forms must be in accord with the requirements of Florida law, including s. 201.22.  The secretary may, if he or she finds that such forms meet these requirements, approve the use of a standard national form for this purpose.

§ 679.521, Fla. Stat.  Although not expressly stated in the statute, Official Comment 2 to that statute articulates a safe-harbor provision that provides "A filing office that accepts written communications may not reject, on grounds of form or format, a filing using these forms."

Although both states statutorily empower their Secretary of State to create approved forms and New York articulates express protections to those that use such a form, neither state requires filers to use any particular form.  This fact is acknowledged in the Bankruptcy Court's Order Granting Summary Judgment.  Order at 11 ("Regions correctly points out that there is no statutory requirement to use an approved additional party form when listing additional debtors on

a financing statement.")

In view of this fact, the Court examines what each states does require of a party seeking

to file a financing statement with the appropriate state agency.  Both states have adopted UCC

section 9-502, which articulates the requirements for a UCC financing statement to be sufficient:

**Contents of Financing Statement; Record of Mortgage as Financing Statement; Time of Filing Financing Statement.**

**(a) Sufficiency of Financing Statement**
Subject to subsection (b) [which governs real-property-related financing statements], a financing statement is sufficient only if it:
  (1) provides the name of the debtor;
  (2) provides the name of the secured party or a representative of the secured party; and
  (3) indicates the collateral covered by the financing statement.

Fla. Stat. § 679.5021; N.Y. U.C.C. 9-502.[1]

Both states have also fully adopted UCC section 9-503, which provides:

**Name of Debtor and Secured Party**

(1) A financing statement sufficiently provides the name of the debtor:
  (a) If the debtor is a registered organization, only if the financing statement provides the name of the debtor indicated on the public record of the debtor's jurisdiction of organization which shows the debtor to have been organized;

Fla. Stat. § 679.5031; N.Y. U.C.C. 9-503.

Here, The Committee has failed to set forth any evidence that would establish that the

financing statements in question did not contain sufficient information to meet the statutory

requirements of both Florida and New York law.  Accordingly, for purposes of reviewing the

underlying order on summary judgment, the Court proceeds on the assumption that Appellant

[1] N.Y. U.C.C. section 9-502 also includes a fourth requirement governing cooperative interests.

filed legally "sufficient" financing statement as defined by both Florida and New York law.[2]  See Fla. Stat. § 679.5021; N.Y. U.C.C. 9-502.

A "sufficient" financing statement, however, is not automatically perfected.  Florida and New York both provide that "A financing statement substantially complying with the requirements of this part is effective, even if it has minor errors or omissions, unless the errors or omissions make the financing statement seriously misleading." Fla. Stat. § 679.5061(1); N.Y. U.C.C. 9-506(a) (emphasis supplied).  Both states also provide that "If a search of the records of the filing office under the debtor's correct name, using the filing office's standard search logic, if any, would disclose a financing statement that fails sufficiently to provide the name of the debtor in accordance with [UCC section 9-503], the name provided does not make the financing statement seriously misleading."  Fla. Stat. § 679.5061(3); N.Y. U.C.C. 9-506(c).

UCC section 9-506 clearly establishes that if a search of the records under the debtor's correct  name does disclose a financing statement for the debtor, even if the name provided in the financing statement is in some manner deficient, the name provided does not make the financing statement misleading.  At issue here is whether a financing statement is "seriously misleading," as a matter of law, under circumstances where the result of a search of the records of the filing office does not disclose a filing statement related to the debtor.  The Bankruptcy Court answered this question in the affirmative, and although not relied on by the Bankruptcy Court, so has the

---

[2] Although Appellant urges this Court to compare the names listed in the disputed UCC financing statements with the Florida Department of Corporations and the New York Department of State, Division of Corporations, State Records and Uniform Commercial Code Database, the Court declines to do so at this time.  The Court is simply proceeding on the basis that because Appellee, as the moving party, has failed to set forth any evidence that challenges the accuracy of the names listed in the underlying UCC financing statements, it is not entitled to summary judgment on this issue of sufficiency.

United States Court of Appeals for the Third Circuit.  In In re Jersey Tractor Trailer Training Inc., 580 F.3d 147, 158 (3rd Cir. 2009), the court stated that revised U.C.C. § 9–506(c)[3] "narrows the responsibility of a reasonable searcher, providing that a misfiled financing statement will be considered seriously misleading unless 'a search of the records of the filing office under the debtor's correct name, using the filing office's standard search logic, if any, would disclose [the misfiled] financing statement. . . ."

The interpretation given to section 9-506(c) by the Bankruptcy Court and the Third Circuit effectively rewrites the provision to read "if a search of the records of the filing office under the debtor's correct name, using the filing office's standard search logic, if any, would not disclose a financing statement for the debtor, the financing statement is seriously misleading." Obviously, if the state legislatures of Florida and New York wished to render the legal effectiveness of a financing statement dependent on whether a search under the debtor's name would or would not disclose the financing statement, they could have done so.  Under this reading of the statute, a correct and properly completed, but misfiled, financing statement would be legally ineffective if a search of the records did not disclose the financing statement, even if the misfiling was not attributable to the filer.  This reading of the statute nullifies section 679.517, Florida Statutes, and N.Y. U.C.C. section 9-517, both of which provide that "The failure of the filing office to index a record correctly does not affect the effectiveness of the filed record."[4]  This Court's interpretation of those statutes is further supported by Official Comment 2

---

[3] The Third Circuit was reviewing New Jersey's version of UCC section 9-506(c), who, like Florida and New York, adopted an unaltered version of UCC section 9-506(c).

[4] Both the Florida and New York codifications of UCC section 9-517 are identical both in the text and in the comments.

to both those statutes, which provides:

> **Effectiveness of Mis-Indexed Records.** This section provides that the filing office's error in mis-indexing a record does not render ineffective an otherwise effective record. As did former Section 9-401, this section imposes the risk of filing-office error on those who search the files rather than on those who file.

Here, Regions not only asserts that its financing statement was not seriously misleading, but in its Answer to The Committee's Complaint it set forth an affirmative defense that the non-disclosure was based on a filing error by the respective filing offices.  See DE 2-3 at 43.  "When the movant seeks a final judgment, he must seek to establish the existence or nonexistence of enough essential elements of a claim and its related defenses and avoidances to permit full disposition of the claim as a matter of law, as [Rule 56] provides."  Martin B. Louis, Federal Summary Judgment Doctrine: A Critical Analysis, 83 Yale L.J. 745, 747 (1974)).  As the moving party, in order for The Committee to prevail on summary judgment, it must come forward with evidence to defeat or overcome Regions' affirmative defense.  See Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).  Until the moving party meets its burden, the non-moving party, here Regions, has no burden to come forward and demonstrate a material question of fact. Id.

In its Statement of Undisputed Facts in the Motion for Summary Judgment filed below, The Committee has not presented any evidence to overcome or defeat Regions' affirmative defense of a filing or indexing error by the respective filing offices of New York and Florida. See DE 2-3 at pp. 46-50.  Nor was there any record evidence that the financing statements were considered by the filing offices to be defective, erroneous or seriously misleading.[5]

---

[5] Evidence could have been presented either from the individuals who actually filed the financing statements, or if they could not be determined or located, evidence from representatives

The Bankruptcy Court concluded, as a matter of law, that the failure to use approved forms and the failure to list the debtor in the debtor box on the form used rendered the filing "seriously misleading." This Court concludes that such a finding was a question of fact which could not be determined as a matter of law on this record. The Bankruptcy Court also resolved other factual questions in favor of the moving party despite the lack of any record evidence to support the findings. For example, the Bankruptcy Court concluded that "Had the additional debtor information been submitted using an approved standard form . . . or had there been a direction in the additional debtor box on the first page of the UCC-1 form to look at the attachment for additional debtor information, the result here would be different." Order at 11. This is a factual finding which refutes Regions indexing error affirmative defense. Yet, The Committee, which was the moving party, never presented evidence to overcome the defense, and there was no record evidence to support the Bankruptcy Court's finding. The Bankruptcy Court further concluded that

> the New York filing office treated Regions' unapproved additional debtor attachment in accordance with Rule 143-1.4(c). . . . Under Rule 143-1.4(c) the New York filing office was permitted to, and apparently did, treat the additional debtor information contained in "such non-approved exhibit, schedule or attachment as not having been provided in the UCC document" . . . Therefore, the additional debtors Camtech and Avstar Fuel, listed on an unreferenced and unapproved attachment, were treated as not having been provided in the UCC document pursuant to the rule, and consequently, the financing statement was not indexed under the names of those entites. The New York UCCs, having neither used the approved additional party form, nor having contained any direction to look beyond the first page of the UCC-1 for additional debtor information, were seriously misleading with respect to additional debtors Camtech and Avstar Fuel.

Order at 12-13 (emphasis supplied). These were also factual findings which could not be

---

of those offices who could testify about the standard practices or procedures used when filing financing statements in the format used in this case.

determined as a matter of law on the record below.

Because the Bankruptcy Court erroneously granted summary judgment despite the existence of genuine questions of material fact, the Order of the Bankruptcy Court is **REVERSED**.

### V.  Conclusion

Based upon the foregoing, it is **ORDERED AND ADJUDGED** that the decision on appeal of Bankruptcy Judge Paul G. Hyman is **REVERSED** and **REMANDED** for further proceedings consistent with this Order.  This case is **CLOSED**, and all pending motions are **DENIED** as moot.

**DONE AND ORDERED** in Chambers at West Palm Beach, Florida this 30th day of March, 2012.

_____
KENNETH A.  MARRA
United States District Judge